NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BLAKE B., | ) | |
| | ) | Supreme Court No. S-15766 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3KN-11-00061 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT[*] |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1556 – October 28, 2015 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: Hanley Robinson, Anchorage, for Appellant. Jonathan A. Woodman, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

Blake B. appeals the trial court's termination of his parental rights to his daughter. Blake argues that the trial court erred in finding: (1) that his conduct caused his daughter to be a child in need of aid and that he failed to remedy his conduct within a reasonable time; (2) that the Office of Children's Services (OCS) made reasonable

---

[*] Entered under Alaska Appellate Rule 214. The name used in the caption is a pseudonym.

efforts to provide him with family support services; and (3) that termination of his parental rights was in his child's best interests. We outline below the basis for the trial court's decision and the parties' arguments on appeal, and we conclude that the termination order should be affirmed.

Blake's daughter was born in March 2010 and first came to the attention of OCS a month later. OCS initially tried to support Blake and the child's mother as they struggled with the challenges of parenting, but in December 2011 the agency took custody of the child due to her parents' chronic neglect and placed her in a foster home. OCS had also received reports of drug use and domestic violence by both parents.

In February 2012 Blake completed a substance abuse assessment at OCS's request, but he resisted OCS's referrals for parenting classes and a neuropsychological evaluation. He began drug intervention classes but was reluctant to participate in the recommended residential treatment. Over the next two and a half years he had eight different substance abuse assessments. These assessments recommended both in-patient and out-patient treatment, and most noted Blake's "lack of insight regarding his substance abuse problem." Blake variously resisted treatment, failed to complete it, or attended it only sporadically. He was arrested on a felony drug charge in July 2012 and was arrested on a new felony drug charge in April 2013 while on probation. Ultimately, Blake was released from custody in February 2014. He did participate in substance abuse treatment after his release, and he was set to complete his course of treatment in September 2014.

The court held a termination trial in July 2014 and made oral findings terminating Blake's parental rights in November. The court found by clear and convincing evidence that Blake's conduct had caused his daughter to be a child in need of aid, that Blake failed to remedy his conduct within a reasonable time, and that OCS made reasonable efforts to reunify Blake and his daughter; and by a preponderance of

the evidence that termination of Blake's parental rights was in his daughter's best interests. Blake appeals these findings.

1.     **The Child In Need Of Aid Finding Is Not Clearly Erroneous.**

Blake first argues that the trial court erred in finding that his child was a child in need of aid because of his substance abuse and that he failed to remedy his conduct within a reasonable time.[1] OCS responds that despite Blake's participation in treatment, his "history and pattern of substance abuse" justified the trial court's finding.

Before terminating parental rights, the trial court must find by clear and convincing evidence that the child is a child in need of aid under AS 47.10.011[2] and that the parent "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[3] In a termination proceeding we review a trial court's findings of fact for clear error,[4] and "[w]e review

---

[1]     The trial court found that Blake's daughter was a child in need of aid under both AS 47.10.011(8) (domestic violence) and (10) (substance abuse). We discuss only the latter ground, which alone is sufficient to support a child in need of aid finding. *See, e.g.*, *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 431 (Alaska 2012) ("Because we affirm the superior court's finding of abandonment, we do not reach the State's alternative argument for termination based on neglect."); *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010) (declining to decide issues of alternative grounds for termination when one ground was dispositive).

[2]     AS 47.10.088(a)(1).

[3]     AS 47.10.088(a)(2)(B).

[4]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)). Factual "[f]indings are clearly erroneous if review of the entire record leaves us with 'a definite
(continued...)

de novo whether a trial court's findings satisfy the . . . child in need of aid statute."[5]  In determining whether a parent has remedied the conduct at issue the court may consider any fact relating to the child's best interests, including but not limited to:

> (1)     the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;
>
> (2)     the amount of effort by the parent to remedy the conduct or the conditions in the home;
>
> (3)     the harm caused to the child;
>
> (4)     the likelihood that the harmful conduct will continue; and
>
> (5)     the history of conduct by or conditions created by the parent.[6]

We review for clear error the trial court's determination that a parent failed to remedy the conduct or conditions that placed the child at risk.[7]

---

    **4**     (...continued) and firm conviction that a mistake has been made.' " *Sherman B.*, 290 P.3d at 427-28 (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

    **5**     *Barbara P.*, 234 P.3d at 1253.

    **6**     AS 47.10.088(b); *see also Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 255 P.3d 1003, 1011 (Alaska 2011) (noting that in context of assessing whether parent has remedied conduct or conditions that placed child at risk of harm, "we have directed trial courts to consider the totality of the State's evidence in assessing the risk of future harm to children").

    **7**     *Barbara P.*, 234 P.3d at 1253 ("Whether the parent has 'remedied the conduct or conditions . . . that place the child at substantial risk' and whether 'returning the child to the parent would place the child at substantial risk of physical or mental injury' are factual determinations best made by a trial court after hearing witnesses and reviewing evidence . . . .") (first alteration in original) (footnotes omitted) (quoting

In finding Blake's daughter to be a child in need of aid, the trial court noted that "[Blake's] repeated abuse of substances such as marijuana, spice, [and] meth have placed [the child] [at] a significant risk of harm." The court found that Blake's "repeated incarcerations for felony drug charges have resulted in frequent and prolonged absences which have impaired his ability to parent [his child] and maintain a relationship with her." In particular, the court noted Blake's repeated resistance to treatment and the connection between the substance abuse and angry outbursts that upset his daughter. Blake concedes that his "substance abuse over time has harmed [his daughter] in terms of his inability to form and maintain the relationship he had with her prior to his incarceration," but he argues that he had remedied his substance abuse by the time of termination and it therefore should not have formed the basis for a child in need of aid finding.

In support of this argument, Blake cites his eight substance abuse assessments and testimony from his substance abuse counselor that he was receiving treatment at the time of trial. The trial court did not find the fact of Blake's eight assessments compelling, however, noting that in one instance Blake sought another assessment rather than following the recommendations of the earlier one. The court also noted that Blake knew substance abuse treatment was a priority of his case plan, but he resisted treatment and repeatedly denied that he had a problem. Although the court commended Blake for his recent sobriety, acknowledging that he was participating in treatment at the time of the termination trial and was on track to finish it, the court found that Blake was "new to sobriety" and "would have to demonstrate a sustained sobriety for some time before [the child] could be safely returned to his care." We conclude that,

---

[7]    (...continued)
AS 47.10.088(a)(2)).

despite Blake's recent progress, it was not clear error for the trial court to find that he failed to remedy his conduct within a reasonable time in light of his recurring substance abuse and his problematic treatment history.

**2.    The Reasonable Efforts Finding Is Not Clearly Erroneous.**

Blake next argues that the trial court erred in finding that OCS made reasonable efforts to provide him with family support services while he was incarcerated. He contends that OCS's failure to arrange in-person visitation during his incarceration means that it failed to provide reasonable efforts toward reunification. OCS responds that it did continue to work with him during this time, offering him substance abuse treatment, parenting classes, and telephonic visitation.

Before terminating parental rights the trial court must find by clear and convincing evidence that OCS made timely, reasonable efforts to provide family support services designed to prevent out-of-home placement or enable the child's safe return to the family home.[8]  OCS's statutory duties include: (1) identifying family support services that will assist in remedying the parent's conduct; (2) actively offering and referring the parent to those services; and (3) documenting its actions.[9]  OCS fulfills this requirement by "setting out the types of services that a parent should avail himself or herself of in a manner that allows the parent to utilize the services."[10]  Reunification efforts do not need to be perfect, but they must be reasonable under the circumstances, depending on the parent's substance abuse history and willingness to participate in

---

[8]    AS 47.10.086(a), .088(a)(3).

[9]    AS 47.10.086(a).

[10]    *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 679 (Alaska 2008) (quoting *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720 (Alaska 2003)) (internal quotation marks omitted).

treatment,[11] the history of services provided by OCS,[12] and the parent's cooperation with OCS.[13] The reasonableness of OCS's efforts may also depend on the parent's expressed interest in parenting, with the agency's responsibility lessening as the parent's interest wanes.[14] "In reviewing whether OCS made reasonable efforts, a court considers [OCS's] reunification efforts in their entirety. The court must first identify the problem that caused the children to be in need of aid and then determine whether OCS's efforts were reasonable in light of the surrounding circumstances."[15]

The trial court found that OCS provided the following family services in an attempt to enable the child's safe return to Blake's custody:

> referrals to substance abuse treatment, UAs, referral to vocational training and parenting services. . . . [Offers of] numerous parenting classes, family visits, mental health

---

[11]    *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013).

[12]    *Audrey H.*, 188 P.3d at 679 n.35 ("[T]he determination of whether OCS made reasonable efforts may involve consideration of all interactions between the parent and OCS."); *Erica A. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 7 (Alaska 2003) ("[T]he reasonableness of the division's efforts . . . must be viewed in light of the entire history of services . . . .").

[13]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 953 (Alaska 2013).

[14]    *Audrey H.*, 188 P.3d at 679.

[15]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1262 (Alaska 2010) (footnote omitted) (holding trial court did not clearly err in finding OCS's reunification efforts were reasonable, despite failure to provide visitation in prison, in light of OCS's reunification efforts in their entirety); *see also Audrey H.*, 188 P.3d at 679-81 (holding that although OCS's efforts were limited at times, this did not render its efforts unreasonable when considered in context of history with parent).

assessments, a neuropsych[ological] evaluation, and many, many, many different referrals for substance abuse treatment.

The trial court did find that OCS could have done more to facilitate in-person visitation while Blake was incarcerated, but it also found that in-person visits would likely not have been in the child's best interest "given her extreme anxiety with new situations and her lack of bond with [Blake]." The trial court also found that Blake failed to follow through with some of OCS's other suggestions for maintaining contact with his daughter during his incarceration, such as recording stories for her in his own voice and writing her letters. He instead insisted on telephone visits, which "did not go well and were upsetting to [the child]." Having reviewed the record, we conclude that the trial court did not clearly err in finding reasonable efforts.

### 3. The Best Interests Finding Is Not Clearly Erroneous.

Finally, Blake contends that the trial court erred in finding that termination of his parental rights was in his daughter's best interests. He contends that at the time of termination he was actively engaged in his case plan and dedicated to reuniting with his daughter and that the lack of a closer bond is due in large part to OCS's failure to provide meaningful in-person contact while he was incarcerated. OCS responds that the child's need for permanency, and uncertainty over whether Blake can maintain sobriety, made it important to move on with adoption by her foster mother, who had been caring for the child for two and a half of her four years. Blake concedes that his daughter is closely bonded with her foster mother and would be distraught if removed from her home.

Before terminating parental rights the trial court must find by a preponderance of the evidence that termination is in the child's best interests.[16] In

---

[16]    CINA Rule 18(c)(3); *see also* AS 47.10.088(c).

making this determination the trial court may consider the statutory factors listed in AS 47.10.088(b)[17] as well as any other facts relating to the child's best interests.[18] The trial court is not required to consider or give particular weight to any specific factor, including a parent's love for the child or desire to parent,[19] and it may consider factors such as the child's bond with foster parents, the child's need for permanency, and the parent's lack of progress.[20]

Here the trial court found that the child needed permanency, that the likelihood of returning her to Blake's care within a reasonable time was low, and that it was not in her best interests to wait for Blake to make further strides toward permanent sobriety, especially in light of his resistance to treatment during all but the final months of the proceedings. The trial court also noted Blake's resistance to parenting classes and his inability to understand his daughter's need for structure and consistency to address her extreme anxiety. As these findings are supported by evidence in the record, we

---

[17] These include:

(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.

[18] *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).

[19] *Id.*

[20] *Id.*; *see also Barbara P.*, 234 P.3d at 1263-64 (upholding finding that termination was in children's best interests based on their need for permanency, stability in their foster home, and fact that neither biological parent would be ready to care for the children on a full-time basis within a reasonable period of time).

conclude that the trial court did not clearly err in finding that termination was in the best interests of the child.

Having reviewed the record and carefully considered Blake's arguments on appeal, we AFFIRM the trial court's order terminating Blake's parental rights.