NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SLOANE K., ) | |
| ) | Supreme Court No. S-16207 |
| Appellant, ) | |
| ) | Superior Court No. 3KN-14-00031 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1595 – September 14, 2016 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Charles T. Huguelet, Judge.

Appearances: Megan Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Miranda L. Strong, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee. Lisa Wilson, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

I.  **INTRODUCTION**

A mother challenges the trial court's decision terminating her parental rights to her child. Because the court's relevant finding is not clearly erroneous and the

---

\*      Entered under Alaska Appellate Rule 214.

court correctly applied relevant law, we affirm the termination of the mother's parental rights.

## II.    BACKGROUND

Sloane K.[1] appeals the superior court's order terminating her parental rights to her child.[2]  After a trial the court found that the Office of Children's Services (OCS) had met its burden of proof for terminating Sloane's parental rights.  Sloane appeals only one finding underlying the termination:  that OCS made reasonable efforts to reunify the family.[3]

## III.    DISCUSSION

Sloane argues the record does not support the trial court's finding that OCS

---

[1]    A pseudonym is used to protect privacy.

[2]    Under Alaska Child in Need of Aid (CINA) Rule 18(c), parental rights may be terminated at trial only if the State shows the following by clear and convincing evidence:  (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011; (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) reasonable efforts have been made to provide family support services designed to prevent the breakup of the family.  The State is also required to show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[3]    Whether OCS made reasonable efforts to reunify a family is a mixed question of fact and law. *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 428 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).  We will affirm factual findings that are not clearly erroneous. *Id.* at 427 (citing *Christina J.*, 254 P.3d at 1103).  A finding is clearly erroneous if "a review of the entire record leaves us with a definite and firm conviction" that the finding is mistaken. *Id.* at 427-28 (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).  We review legal questions de novo. *Id.* at 428 (citing *Christina J.*, 254 P.3d at 1104).

made reasonable efforts to reunify her with her child. But we conclude the record of OCS's involvement with Sloane with respect to this child supports that finding.[4]

The trial court recognized that Sloane's mental health was "the predominant issue," pointing to a diagnosed psychotic disorder; delusions about her pregnancy; records indicating she did not recognize the extent of her mental illness and could not meet her own or a child's needs; records evidencing auditory hallucinations; and a psychiatric opinion that because of poor impulse control, episodes of explosive anger, and paranoid reactions to others, Sloane could not safely parent a child. The record includes a psychiatric evaluation indicating that if Sloane "were able to actively and cooperatively involve herself in treatment it would likely take a few years for a noticeable change in her functioning to occur and increase her ability enough to be able to start understanding her child's emotional and physical needs."

The record supports the trial court's finding that "OCS'[s] efforts were hampered by [Sloane's] repeated incarcerations and her conduct during the times she was not incarcerated." As the court found, OCS's efforts included "offering substance abuse assessment/treatment, participation in mental health assessment/treatment, random drug

---

[4] OCS argues that we should also consider its efforts in a previous case with Sloane involving the termination of her parental rights to a different child. But because: (1) OCS relies on documents not admitted at trial; (2) the trial court does not appear to have considered Sloane's previous OCS case; and (3) the record of OCS's involvement with Sloane in this case is sufficient for our review, we do not consider Sloane's previous OCS case.

Sloane contends that the trial court's laudatory comments about the OCS case worker's efforts in other CINA cases was an impermissible use of information outside the record to make its determination. But the trial court noted the caseworker's efforts in this case, and we, of course, are concerned only with those efforts. In light of our conclusion that the record contains clear and convincing evidence that OCS made reasonable efforts to reunify the family, any alleged error by the trial court was harmless.

testing, extensive efforts to locate the parents, developing a case plan, offering parenting classes[,] and offering family contact." When OCS attempted to schedule a visit with the child while Sloane was incarcerated, she was in solitary confinement and transferred to Alaska Psychiatric Institute (API) shortly thereafter; she was not permitted visits with the child while she was at API; and her OCS case worker was also not able to visit Sloane while she was at API. After Sloane was released from API, she contacted OCS to arrange a visit with the child, but after making the arrangements OCS then was unable to locate or contact Sloane, and she made no further contact with OCS. The court also considered the Department of Corrections' (DOC) "extensive efforts at rehabilitation" because those efforts "concerned the same issues as the OCS case plan[,] mental health and substance abuse."[5] But the court found that Sloane "rejected rehabilitative efforts by DOC, just as she rejected efforts by [OCS] to engage her in any type of reunification efforts."

OCS's difficulty in locating Sloane and her refusal to cooperate render OCS's efforts, though limited, reasonable under the circumstances. Courts reviewing OCS's efforts in CINA cases can consider a parent's refusal to cooperate.[6] Sloane demonstrated a pattern of refusing to cooperate with OCS: she refused to acknowledge her OCS case worker the first two times he spoke with her; she refused to communicate with the case worker by telephone and refused his calls; and, following a call to schedule

---

[5]     *See Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 646 (Alaska 2013) (stating that parent's incarceration affects but does not relieve OCS's reasonable efforts duty and that during incarceration DOC has primary responsibility to provide services). Sloane also received mental health treatment at API shortly after the child's birth.

[6]     *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013) (citing *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678 (Alaska 2008)).

a visit with the child after her release from API, she broke contact with OCS. At a disposition hearing Sloane made strong statements that she no longer wished to pursue custody: "And I would rather not be a part of these court hearings any more. I don't want to be a -- I don't want a lawyer, I don't want a -- a judge, and I don't want anybody contacting me on my kids' welfare anymore."

The court found "beyond a reasonable doubt" — and the record contains at least clear and convincing evidence — "that OCS made timely reasonable . . . efforts in this case" despite Sloane's continued refusal to acknowledge her parenting issues or to cooperate with OCS. Accordingly we conclude the trial court did not err in determining that OCS made the required, but unsuccessful, reasonable efforts to reunify this family.

## IV. CONCLUSION

We AFFIRM the termination of Sloane's parental rights.