NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

JOY S., )
)           Supreme Court No. S-16184
           Appellant, )
)           Superior Court No. 3PA-13-00167/
)           00168 CN
v. )
)           MEMORANDUM OPINION
STATE OF ALASKA, )           AND JUDGMENT*
DEPARTMENT OF HEALTH & )
SOCIAL SERVICES, OFFICE OF )           No. 1603 – December 14, 2016
CHILDREN'S SERVICES, )
)
           Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Jonathan Woodman, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, Palmer, and Richard Allen, Public Advocate, Anchorage, for Guardian ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

_____

\*       Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

The superior court terminated a mother's parental rights to her children after hearing evidence of the mother's substance abuse, mental illness, and domestic violence. The court accepted a psychologist's diagnosis of bipolar disorder and faulted the mother for her failure to accept the diagnosis and seek treatment for it. The mother argues that the court erred both in finding that she failed, within a reasonable time, to remedy the conditions that placed her children at risk of harm and in finding that returning the children to her care would likely cause them serious emotional or physical damage. She contends that the evidence of her mental illness is conflicting and that the court failed to give sufficient weight to the fact that she completed some treatment for her substance abuse and mental health problems after trial.

Because the record supports the superior court's findings, we affirm the termination order.

## II. FACTS AND PROCEEDINGS

### A. Background

Joy S. and Cary F. are the parents of Olin, born in 2009, and Emeric, born in 2011.[1] The Office of Children's Services (OCS) filed an emergency petition for temporary custody of the two children in December 2013. According to the petition, OCS had begun investigating the parents a few months earlier after receiving a report that Joy was using drugs and exhibiting signs of mental illness. OCS found evidence of drug use, domestic violence, and "extremely unbalanced" behavior on Joy's part, but it put off further action after Joy and the children "engaged in services with community agencies" and the children's daycare reported that it had no concerns.

---

[1] We use pseudonyms to protect the parties' privacy. Cary voluntarily relinquished his parental rights, which are not at issue in this appeal. Both children are Indian children under 25 U.S.C. § 1903(4) (2012).

According to the petition, OCS soon received another report that Joy was threatening to kill herself, feeling "helpless and hopeless" and "overwhelmed." OCS implemented a safety plan and placed the children with Cary, "who agreed to protect the children until [Joy] engaged in additional services." But OCS had concerns about Cary as well due to his "affiliates and assaultive history." And when Joy obtained a temporary domestic violence restraining order against him, he returned the children to her without informing OCS. Alaska State Troopers later contacted Joy and the children and found "a heavy thick odor of marijuana in the residence" even though Joy had told OCS she had stopped using the drug.

The court held a hearing on OCS's petition in December 2013 and found on "a probable cause basis that the children [were] children in need of aid" because of the risk of mental injury from their parents' conduct.[2] Following a contested adjudication hearing a few months later, the court found by a preponderance of the evidence that the children were children in need of aid because of domestic violence in the home, both parents' substance abuse, Joy's mental health problems, and Cary's abandonment.

### B. Termination Of Parental Rights

In January 2015 OCS petitioned to terminate Joy's parental rights. The termination trial took place in July and August 2015. After trial but before the superior court issued its findings, Joy filed a "Motion to Release Custody and to Return Indian Children to Biological Mother," along with an affidavit explaining that she had completed treatment for substance abuse and post-traumatic stress disorder at an outpatient clinic where she had begun treatment a few weeks before trial began. Joy's affidavit also attacked the fitness of the children's current placement. The court denied

---

[2]    *See* AS 47.10.011(8).

Joy's motion without a hearing, but it took her new allegations into consideration in its termination order, ultimately deciding that they "did not require any change in the court's analysis."

The court terminated Joy's parental rights in December 2015. It found that Olin and Emeric were children in need of aid for three different but factually interrelated reasons. First, the court found that the children had been "subjected to mental injury and are at risk of mental injury due to domestic violence in their parents' home."[3] The court recounted several incidents of domestic violence between Joy and Cary, at least one of which the children witnessed; it found that both children had developed behavioral problems involving "anger issues, outbursts, and an inability to regulate their own emotions," at least in part because of the violence they had witnessed; and it noted with concern Joy's apparent inability to recognize the seriousness of the problem and the impact violence had on the children.

Second, the court found that Joy's ability to parent was substantially impaired by her addictive or habitual use of marijuana, and that her drug abuse resulted in a substantial risk of harm to the children.[4] The court noted that Joy had been repeatedly diagnosed with drug dependence and advised to seek treatment but that she relied on marijuana to self-medicate to manage her mental health and, at least until the very eve of trial, was not interested in trying to quit. The court found credible Joy's "testimony that she had finally decided that she needed to stop smoking marijuana and to cease relying on it to manage stress," and it credited her post-trial assertions "that she has remained clean and completed her substance abuse treatment." But the court also noted that "her sobriety is very recent," that she naively believed 72 hours of sobriety

---

[3]    *See* AS 47.10.011(8)(A), (B)(i).

[4]    *See* AS 47.10.011(10).

"means [the problem is] defeated," and that she failed to recognize the inappropriateness of her past drug use, making it "not at all clear that she fully understands her potential for relapse."

Finally, the court found that Olin and Emeric were children in need of aid because of Joy's mental illness, "linked with past detrimental behavior."[5] The court found that Joy had "correctly been diagnosed with bipolar disorder, post-traumatic stress disorder, and borderline personality features." It described a number of instances in which Joy had been unable to control her behavior: frightening OCS workers with her angry outbursts, stalking her children's foster mother, requiring police intervention, and incurring criminal charges. The court's findings about Joy's mental illness were buttressed by its own observations of her during trial, where it found her testimony "at times erratic, inconsistent, and incoherent" and her attitude often inappropriately angry and resistant. The court credited expert testimony that Joy's inability to regulate her own emotions was likely to cause serious emotional harm to her children, who were in the process of learning their own emotional responses from their caregivers.

After making these findings about the children's CINA status, the superior court further found, as the law requires for termination in cases involving Indian children,[6] that Joy had not remedied her conduct within a reasonable time; that OCS had

---

[5]    *See* AS 47.10.011(11).

[6]    *See generally Diana P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 355 P.3d 541, 546 (Alaska 2015) (citing 25 U.S.C. § 1912(d), (f); AS 47.10.088(a), (c); CINA Rule 18(c)). Before terminating parental rights under the Indian Child Welfare Act (ICWA), the trial court must find by clear and convincing evidence that the parent has not remedied, within a reasonable time, the conduct or conditions that place the child at substantial risk of injury, and that active but unsuccessful efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. 25 U.S.C. § 1912(d);
(continued...)

made active but unsuccessful efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the family; that terminating Joy's parental rights was in the children's best interests; and that Joy's continued custody of the children was likely to cause them serious emotional or physical damage.

## III. STANDARDS OF REVIEW

"Whether the parent has 'remedied the conduct or conditions . . . that place[d] the child at substantial risk' and whether 'returning the child to the parent would place the child at substantial risk of physical or mental injury' are factual determinations best made by a trial court after hearing witnesses and reviewing evidence, not legal determinations to which an appellate court should apply its independent judgment."[7] "Whether substantial evidence supports the court's findings that the state . . . proved beyond a reasonable doubt that granting the parent custody would likely result in serious damage to the child [is a] mixed question[] of law and fact."[8]

---

[6](...continued)
CINA Rule 18(c). ICWA further requires that the trial court find, "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). Finally, the trial court must determine by a preponderance of the evidence that "termination of parental rights is in the best interests of the child." CINA Rule 18(c)(3).

[7] *Barbara P. v. State, Dep't of Health & Soc. Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (first alteration in original) (first quoting AS 47.10.088(a)(2)(A); then quoting AS 47.10.088(a)(2)(B)).

[8] *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 761 (Alaska 2009).

"In a case involving the termination of parental rights, we review a superior court's findings of fact for clear error."[9] "Findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a definite and firm conviction that a mistake has been made."[10] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[11] "Whether the superior court's findings comport with the requirements of ICWA or the CINA statutes and rules is a question of law that we review de novo."[12]

Finally, "[w]e review a trial court's decision to deny a review hearing for abuse of discretion."[13]

## IV.   DISCUSSION

Joy challenges two of the superior court's findings in support of its order terminating her parental rights: (1) the finding by clear and convincing evidence that she failed, within a reasonable time, "to remedy the conduct or conditions in the home that

---

[9]     *Denny M. v. State, Dep't of Health & Soc. Servs.*, 365 P.3d 345, 348 (Alaska 2016) (quoting *Doe v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 272 P.3d 1014, 1019 (Alaska 2012)).

[10]     *Id.* (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[11]     *Id.* (quoting *Maisy W.*, 175 P.3d at 1267).

[12]     *Carl N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 102 P.3d 932, 935 (Alaska 2004).

[13]     *Moira M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 370 P.3d 595, 599 (Alaska 2016) (citing *Lara S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 209 P.3d 120, 124 (Alaska 2009)).

placed the [children] at substantial risk of harm";[14] and (2) the finding "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the [children] by the parent . . . is likely to result in serious emotional or physical damage to the [children]."[15]   Joy also challenges the superior court's decision not to hold a hearing on her post-trial motion to return custody to her because of her progress addressing her problems with substance abuse and post-traumatic stress disorder.

**A.   The Superior Court Did Not Clearly Err In Finding That Joy Failed To Remedy Her Conduct Within A Reasonable Time.**

Whether a parent has remedied, within a reasonable time, the conduct or conditions that caused the children to be in need of aid is a factual determination.[16]   The trial court in making this determination "may consider any fact relating to the best interests of the child[ren]."[17]   "A reasonable time is statutorily defined as 'a period of time that serves the best interests of the child[ren], taking in account the affected child[ren]'s age, emotional and developmental needs, and ability to form and maintain lasting attachments.' "[18]

---

[14]     *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011) (first citing AS 47.10.088(a)(2)(b); then citing CINA Rule (c)(1)(A)(ii)).

[15]     *See Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 761 (Alaska 2009) (second alteration in original) (first quoting 25 U.S.C. § 1912 (f); then quoting CINA Rule 18(c)(4)).

[16]     *Barbara P. v. State, Dep't of Health & Soc. Servs.*, 234 P.3d 1245, 1253 (Alaska 2010).

[17]     *Shirley M. v. State*, 342 P.3d 1233, 1240 (Alaska 2015).

[18]     *Id.* at 1240 (quoting AS 47.10.990(28)).  "These decisions are made in light

(continued...)

In this case, the conditions that caused Olin and Emeric to be children in need of aid included domestic violence, substance abuse, and parental mental illness. Any one of these findings alone is sufficient to support a conclusion that the two boys are children in need of aid.[19] It follows that Joy's failure to remedy any one of the three conditions leaves the children at risk of harm and supports the court's decision to terminate her parental rights. We therefore address only the court's finding that Joy failed, within a reasonable time, to remedy her mental health problems.

The superior court's order described in detail the witness testimony about Joy's "erratic, incoherent, angry, obsessive, and extreme behavior . . . that at times led to threats and violent behavior." As explaining this behavior in part, the court credited the expert testimony of a psychologist, Dr. Grace Long, who concluded that Joy "met the diagnostic criteria for cannabis dependence, alcohol dependence in partial remission, bipolar disorder, manic, with paranoid features, post-traumatic stress disorder, and a deferred diagnosis of borderline personality disorder features." Dr. Long made a number of recommendations, including continued psychotherapy, medication, abstention from drugs and alcohol, and classes in domestic violence, parenting, and anger management. Dr. Long testified that "if [Joy] does not follow [these] recommendations and address her anger issues, [she] is more likely to continue to have behavioral issues that pose a risk to her children."

---

[18](...continued)
of the legislature's finding 'that children undergo a critical attachment process before the age of six, and "suffer tremendously when their bonding processes are interrupted." ' " *Id.* (quoting *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013)).

[19]      *See Jon S.*, 212 P.3d at 762 ("Because only one statutory basis is required for a CINA finding, we do not need to address the superior court's other CINA findings.").

The superior court commended Joy on her efforts to obtain mental health treatment, but it noted that she was still "unwilling to accept that she needs substantial additional therapy fully to be able to address her mental health issues." The court was primarily concerned that even though Joy had completed treatment for her substance abuse and post-traumatic stress disorder following trial, she "failed to objectively demonstrate effective management of the symptoms of her bipolar disorder — sudden, angry, emotional outbursts"; this failure was "largely because she rejects the diagnosis." The court concluded that Joy's children "cannot wait any longer for [her] . . . to recognize her mental illnesses and to understand how to effectively treat them."

Joy challenges these factual findings on two grounds. First, she argues that the court erred in relying on Dr. Long's diagnosis rather than an assessment by the director of the substance abuse and mental health clinic where Joy completed her treatment. The clinic director rejected a diagnosis of bipolar disorder and concluded instead that post-traumatic stress disorder was Joy's "primary problem." Joy argues that Dr. Long's bipolar "diagnosis conflicts with the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ('DSM')" whereas the director's fits the DSM description. But the superior court found Dr. Long's assessment more credible because, among other reasons, she had more extensive training; she had access to collateral information that the director lacked when he made his different assessment; and Dr. Long's diagnosis accounted for the other evidence of Joy's long-term behavioral problems and her ongoing need for "individualized counseling and medication management."

"[We] defer to a superior court's credibility determinations, particularly when they are based on oral testimony."[20] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[21] The superior court's decision to credit Dr. Long's diagnosis over the different assessment by the clinic director is supported by the record and not clearly erroneous.

Second, Joy contends that "[w]hatever the diagnosis, by the time of trial" she was successfully managing her mental health and had at least begun work on all of Dr. Long's recommendations except for medication, which another health care provider, a psychiatric nurse practitioner, "did not think was absolutely necessary." She argues that the court should have given her more time to address "any outstanding concerns" in light of the progress she made during and after trial. But as discussed above, the evidence supports the superior court's different perspective: i.e., that Joy had yet to come to grips with her bipolar diagnosis and its symptoms and that her progress on other aspects of her mental health, though positive, was too recent to demonstrate real change in light of her extensive history of mental illness.

The superior court considered Joy's plea for more time but found that "continuing to force the children to wait until [Joy] learns how to regulate her own behavior would be entirely unfair given their young age and the amount of time they have spent in state custody." The court concluded that the children "cannot wait any longer for [Joy] to attempt to begin to deal with years of trauma, to recognize her mental

---

[20]     *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 274 (Alaska 2011).

[21]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

illnesses and to understand how to effectively treat them." The court thus appropriately considered Joy's progress in light of the children's best interests, and particularly their need for permanency and stability.[22]

And the court's finding is supported by the record. The boys' therapists testified that Olin and Emeric needed stable environments and consistent caregivers who would model good behavior and help them learn to regulate their emotions. Dr. Long testified that Joy needed to "establish a . . . stable home, a consistent presence in that home over time," in order to provide an appropriate setting for her children, something she would be unable to do until she accepted the recommended treatment for her bipolar disorder. Given the evidence that the bipolar disorder was Joy's most serious obstacle to parenting, that it remained largely unaddressed, and that because of it she continued to pose a risk of injury to her children, we affirm the superior court's finding that Joy failed, within a reasonable time, to remedy one of the conditions that caused Olin and Emeric to be children in need of aid.

B.     **The Superior Court Did Not Err In Finding That Olin And Emeric Are Likely To Suffer Serious Injury If Returned To Joy's Custody.**

"[ICWA] requires that before terminating parental rights, a court must find by evidence beyond a reasonable doubt that returning the child to the parent is likely to

---

[22]     *See Shirley M.*, 342 P.3d at 1240 ("In determining whether a parent has remedied her conduct in a reasonable time, the trial court may consider any fact relating to the best interests of the child."). Joy argues that the children lacked permanency and stability in their current placement, and there is some basis for this claim in the record. OCS transferred the children to a new foster home in November 2015, but the new foster family soon requested their removal due to their "aggressive" and "destructive" behaviors; OCS then moved the children to a therapeutic foster home. Nevertheless, the evidence supports the superior court's conclusion that Joy could not offer the children the stability they required, and it would not serve the children's best interests to transfer them from foster care to an even more unstable environment.

result in serious physical or emotional damage to the child, and that this finding be supported by expert testimony."[23] Joy argues that the superior court erred in finding that this requirement was met, but ample evidence supports the finding.

The superior court relied on the testimony of three qualified experts: Dr. Long and the boys' therapists, Brian Albright and Amanda Wolfe. The court cited the extensive evidence of Joy's "unprompted, anger-fueled outbursts," which Dr. Long testified "were symptomatic of bipolar disorder"; according to Dr. Long, Joy's failure to manage these symptoms with medication meant that her home environment would remain unstable for the foreseeable future.

Joy contends that some of the therapists' testimony supports her position that she does not pose a risk to her children, but the testimony highlighted by the superior court supports its contrary view. Relying on Albright's testimony, the court noted "that if [Olin] were returned to [an] environment . . . with an unstable caregiver, his behaviors would regress and he would be at serious risk of ending up in the criminal justice system." The court cited Wolfe's testimony that Emeric's angry outbursts were likely learned from behavior he witnessed at home and that Joy's volatile behavior would stifle Emeric's growth because he "needs a consistent and stable environment to help him begin to learn to self-regulate."

Joy argues that "the therapists had an insufficient basis upon which to draw any conclusions about [her] future behaviors." She argues that Albright had been provided with only ten pages of OCS visitation logs and Wolfe had started seeing Emeric only a few months before trial. But it is the superior court's function to weigh evidence

---

[23]     *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1019-20 (Alaska 2009) (citing 25 U.S.C. § 1912(f) (2006)).

and assign it probative value.[24] The court heard a great deal of testimony about both children's behavior, descriptions of their sessions with the therapists, and Dr. Long's impressions of Joy's home environment. We cannot say that the court failed to understand the evidence on which the experts relied and the evidence's possible limitations. We conclude that the superior court did not clearly err when it found, beyond a reasonable doubt, that Olin and Emeric were likely to suffer serious physical or emotional damage if returned to Joy's custody.[25]

## V. CONCLUSION

The superior court's order terminating Joy's parental rights is AFFIRMED.

---

[24] *Martha S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 268 P.3d 1066, 1083 n.38 (Alaska 2012) ("As we have noted, 'the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' " (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007))).

[25] Joy also contends that the superior court abused its discretion when it failed to grant her a hearing on her post-trial Motion to Release Custody. But any error would necessarily be harmless. The court "accepted as credible" Joy's assertion "that she has taken the necessary steps to help assure that she remains clean" but still found determinative the fact that she "remains largely untreated with respect to her bipolar disorder." For purposes of its best interests analysis the court accepted Joy's post-trial assertions that significant issues had arisen with the boys' foster placement, which "necessitated a new foster home, thereby once again causing instability for two children who badly needed stability." The court also assumed for purposes of its analysis that Joy had "found a job and an apartment," as she asserted in her post-trial motion. The court still found that the children's best interests favored termination of Joy's parental rights.