*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMY M., | ) | |
| | ) | Supreme Court No. S-14948 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-00028 CN |
| v. | ) | |
| | ) | OPINION ON REHEARING |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH & | ) | No. 6840 - November 8, 2013 |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Megan R. Webb, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.      INTRODUCTION

A young mother had four children who tested positive for cocaine at birth. After her fourth child was born, the Office of Children's Services (OCS) took custody of the child and placed him with his maternal grandmother. Based on the mother's

history of untreated substance abuse, OCS filed a petition for termination of the mother's parental rights three months after the child was born. After trial, the superior court concluded that: (1) the mother's substance abuse placed her child in need of aid; (2) the mother failed to remedy the conditions that placed her child in need of aid within a reasonable time; (3) OCS had made reasonable efforts to reunify the family; and (4) termination was in the best interests of the child. The mother appeals, arguing that she was not given a reasonable time to remedy her substance abuse issues, that OCS did not exercise reasonable efforts over the short period prior to termination, and that termination eight months after birth was not in her child's best interests. We affirm the decision of the superior court because it properly considered the mother's history with OCS, her conduct after the child's birth, and the best interests of the child.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kadin M.[1] was born in February 2012 to Amy M. and Sherman B. This appeal concerns the termination of Amy's parental rights after a termination trial was held when Kadin was eight months old.

#### 1. Background

Amy has a long history of substance abuse. She began drinking and using crack cocaine at age 16. Amy has four children; Sherman is the father of her three youngest children. All four children tested positive for cocaine at birth.

Amy had her first child, Talia, at age 17. After Talia was born, Amy participated in a substance abuse program through Dena A. Coy for six weeks. But she left before completing the program and began using crack cocaine again. Amy's mother

---

[1]    Pseudonyms have been used throughout this opinion to protect the identity of the parties.

Vallerie began to care for Talia when she was nine months old. Vallerie took Talia to her father, and Talia now lives in South Carolina with him.

In September 2007, Amy gave birth to Georgina, her first child with Sherman. When Georgina was about one year old, Sherman took her to a relative's home out of state.[2] Georgina ended up living with another relative in New York who has cared for her since she was fifteen months old.[3]

Darcy was born cocaine and marijuana positive in March 2009. OCS assumed emergency custody of Darcy and placed her with Vallerie. While Amy was in the hospital, an OCS caseworker offered to refer her to a substance abuse treatment program. But after Amy was discharged she had no contact with OCS until September, when OCS discussed a case plan with her. This initial case plan required her to: (1) have an updated substance abuse assessment and follow recommendations for treatment; (2) abstain from using alcohol or drugs; (3) complete a mental health evaluation and follow the recommendations; and (4) complete an anger management class.[4] In April 2010, Amy attended an orientation session at a substance abuse treatment program but she did not complete the substance abuse assessment necessary to be admitted. OCS again lost contact with Amy.

---

[2]    *Sherman B. v. State, Dep't of Health & Soc. Servs.*, 290 P.3d 421, 423 n.2 (Alaska 2012).

[3]    A New York court granted the relative sole legal and physical custody of Georgina after Sherman attempted to forcibly remove her from the home when she was three years old. *See id.* at 426.

[4]    Subsequent case plans added requirements to complete parenting classes, establish a safe home and a means of support, and contact the caseworker monthly to provide an address and progress updates.

In December 2010, Amy was arrested. While incarcerated at Hiland Mountain Correctional Center, Amy participated in a substance abuse assessment. Amy admitted that she had been using "a $50 piece [of crack cocaine] daily" for the past six months. The substance abuse assessment recommended long-term residential treatment, and Amy began a residential treatment program while she was incarcerated. Amy did well in residential treatment, but she was released before completing the program. Amy again dropped out of contact with OCS and resumed using crack cocaine.

OCS filed a petition to terminate Sherman's and Amy's parental rights to Darcy in October 2011.[5] A termination trial was held in January 2012 before Superior Court Judge William F. Morse. On the first day of trial, Amy's attorney presented a signed relinquishment of her parental rights.[6] The trial court terminated Sherman's parental rights, and this court affirmed the termination judgment in *Sherman B. v. State, Department of Health & Social Services.*[7]

## 2. Kadin

Kadin was born in February 2012, one month after the termination trial regarding Darcy. After Kadin's birth, the hospital notified OCS that he was born cocaine positive. At the hospital, OCS spoke with Amy about her substance abuse issues and her relationship with Sherman.[8] Amy admitted to using cocaine during her pregnancy.[9]

---

[5]     *Sherman B.*, 290 P.3d 427.

[6]     *Id.*

[7]     *Id.* at 434.

[8]     OCS had concerns about her relationship stemming from Amy's previous report that Sherman gave her cocaine during her previous pregnancies.

[9]     As a result of his exposure to cocaine *in utero* Kadin has displayed some
(continued...)

OCS assumed emergency custody of Kadin and placed him with his grandmother, Vallerie.

After OCS assumed custody, Amy's OCS caseworker, Leslie Johnston, scheduled a team decision-making meeting. Amy did not attend the meeting, but Amy and Sherman began family visits with Kadin twice a week at OCS, and Amy reported that she also visited Kadin at her mother's house.

Sherman and Amy were evicted from their residence in mid-February, and Johnston had difficulty contacting Amy. Johnston was able to schedule a case planning meeting with Amy by attending a family visit at OCS. At the meeting, Johnston discussed Amy's drug use and her need for treatment. Based on the 2011 substance abuse assessment from Hiland Mountain, Johnston recommended that Amy enter long-term residential treatment. But Amy stated that she only needed outpatient treatment. Amy told Johnston that she planned to go to New York to get Georgina and that she could attend outpatient treatment there. Amy refused to sign a release of information to enable Johnston to complete referrals for treatment.

Johnston developed a case plan which required Amy to: (1) complete an updated substance abuse assessment and follow the recommendations; (2) refrain from substance abuse and illegal activity; and (3) sign a release of information to allow Johnston to complete referrals on her behalf. Johnston scheduled two meetings to discuss the case plan, but Amy did not show up.[10] In June, Amy stopped attending family visits, and OCS lost contact with her.

---

[9] (...continued)
developmental problems including delayed mobility skills and muscle stiffness.

[10] According to Johnston, she again attempted to schedule these meetings by attending family visits.

In August 2012, Amy turned herself in for a probation violation and was again incarcerated at Hiland Mountain. While incarcerated, Amy participated in GED classes, a parenting class, and weekly Narcotics Anonymous (NA) meetings. When Johnston found out Amy was incarcerated, she left messages for Amy's probation officer to schedule a substance abuse assessment, but the probation officer did not return her calls.

Amy was released from Hiland Mountain in October. She moved in with her sister and began to visit Kadin. Amy began working as a cleaner, attending GED classes, and going to NA meetings. Amy also made an appointment to meet with Johnston on October 23, 2012 — the day before the trial for termination of Amy's parental rights to Kadin.

## B.    Proceedings

In May 2012, OCS filed a petition for termination of Amy's parental rights to Kadin. A termination trial was held on October 24 and 25, again before Judge Morse. At trial, Amy testified that she was committed to sobriety and that she was willing to do whatever it took to gain custody of Kadin.

Johnston testified that OCS had decided to move quickly on the termination of Amy's parental rights based on Amy's history and because the court had just held the trial regarding Darcy. OCS presented testimony regarding Amy's conduct since Kadin's birth and her history with OCS. OCS also submitted the findings and judgment terminating Sherman's parental rights to Darcy. OCS argued that termination was warranted because of Amy's history of substance abuse, her lack of case-plan participation, and the length of time that it would take her to complete treatment.

Following the trial, the superior court terminated Amy's parental rights. Amy now appeals.

## III. STANDARD OF REVIEW

Whether a parent has remedied the conduct or conditions that placed the child in need of aid and whether termination is in the best interests of the child are findings of fact.[11] We review these findings for clear error.[12] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us with a definite and firm conviction that a mistake has been made."[13]

Whether OCS made reasonable efforts to reunify the family is a mixed question of fact and law; we review the legal portion of this question de novo.[14]

## IV. DISCUSSION

Amy appeals the superior court's findings that: (1) she failed to remedy the conditions that placed Kadin in need of aid within a reasonable period of time; (2) OCS made reasonable efforts to reunify her family over a reasonable period of time; and (3) termination was in Kadin's best interests. She does not appeal the superior court's finding that her substance abuse placed Kadin in need of aid.

---

[11]    *Pravatt P. v. State, Dep't of Health & Soc. Servs.*, 249 P.3d 264, 273 (Alaska 2011) (citing *Barbara P. v. State Dep't of Health & Soc. Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)) (remedied conduct); *Dashiell R. v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 841, 850 (Alaska 2009) (citing *Frank E. v. State, Dep't of Health & Soc. Servs.*, 77 P.3d 715, 717 (Alaska 2003)) (best interests).

[12]    *Maisy W. v. State ex rel. Dep't of Health & Soc. Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) (citing *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[13]    *Barbara P.*, 234 P.3d at 1253 (quoting *Brynna B.*, 88 P.3d at 529) (internal quotation marks omitted).

[14]    *Sherman B. v. State, Dep't of Health & Soc. Servs.*, 290 P.3d 421, 428 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

**A.** **The Superior Court Did Not Clearly Err In Finding That Amy Failed To Remedy Her Conduct In A Reasonable Time.**

In order to terminate parental rights the superior court must find by clear and convincing evidence that the parent has "failed, within a reasonable time, to remedy the conduct or conditions . . . that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[15] A reasonable time is statutorily defined as "a period of time that serves the best interests of the child, taking in[to] account the affected child's age, emotional and development needs, and ability to form and maintain lasting attachments."[16] In determining whether a parent has remedied his or her conduct in a reasonable time, the superior court "may consider any fact relating to the best interests of the child."[17]

The superior court found that Amy's substance abuse had placed Kadin in need of aid because he tested positive for cocaine at birth. To support its conclusion that Amy had not remedied her substance abuse within a reasonable time, the superior court

---

[15] AS 47.10.088(a)(2).

[16] AS 47.10.990(28).

[17] AS 47.10.088(b). This statute also enumerates the following factors for the court's consideration:

> (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;
>
> (2) the amount of effort by the parent to remedy the conduct . . . ;
>
> (3) the harm caused to the child;
>
> (4) the likelihood that the harmful conduct will continue; and
>
> (5) the history of conduct by or conditions created by the parent.

relied on Amy's lengthy history of substance abuse, her need for long-term residential treatment, her failure to seek treatment, and her refusal to sign releases that would allow OCS to contact treatment programs. The superior court found that Amy's "claim that she is now motivated to stay clean and has a sufficient support network of friends and family to accomplish that goal [was] not credible." The court commented that even if it "delay[ed] termination for six or twelve months to see how [Amy] did with treatment, the amount of time it would take her to receive treatment and show that she was not likely to relapse is far too long to be reasonable."

Amy argues that the superior court erred in considering its findings from the previous termination trial concerning Sherman's parental rights to Darcy. She argues that the evidence against Sherman presented at the previous termination trial cannot be used to terminate her parental rights. But a party waives an objection to the consideration of evidence by failing to object at trial.[18] Amy's attorney did not object when OCS submitted the previous termination order concerning Sherman's parental rights to Darcy as an exhibit. And, when the superior court asked the parties if they had any objection to him reviewing his oral findings from the previous termination, Amy's attorney responded, "No." Amy waived this argument by failing to object at trial.

Amy also argues that without considering the evidence presented at the previous termination trial, there was insufficient evidence to support the superior court's conclusion that she failed to remedy her conduct within a reasonable time. We disagree. Amy is correct that the superior court's findings at the previous trial regarding her parental conduct were somewhat limited. Amy's conduct was not the focus of the previous trial because she relinquished her parental rights to Darcy. But in this case, the

---

[18]     *See* Alaska R. Evid. 103(a)(1); *In Re C.L.T.*, 597 P.2d 518, 522 (Alaska 1979) ("Failure to object to alleged error at the trial level may preclude raising the point on appeal.").

superior court did not rely solely on its findings in the previous termination trial. Instead, it considered Amy's conduct as a whole, both before and after Kadin's birth. We have recognized that a parent's history is relevant to whether a parent has remedied her conduct in a reasonable time and whether OCS has made reasonable efforts to reunify the family.[19]

Amy also asserts that she was not given a reasonable time to remedy her conduct because OCS filed the petition for termination only three months after Kadin's birth. However, in *Barbara P. v. State, Department of Health & Social Services*,[20] we affirmed a termination judgment in a case where the petition was filed one month after a child's birth. We upheld the superior court's finding that the parent had not remedied her substance abuse issues in a reasonable time based on her history of substance abuse and relapses, the questionable degree to which she accepted her substance abuse problems, and the superior court's credibility findings.[21]

Here, the superior court relied on similar facts to support the conclusion that Amy would not remedy her conduct within a reasonable time. The court heard evidence regarding Amy's history of substance abuse, her failed attempts at treatment, and her inability to parent her other children. Amy's problems with substance abuse had spanned almost 10 years. Amy had entered treatment twice, but failed to complete it. Amy's case

---

[19] *See Sherry R. v. State, Dep't of Health & Soc. Servs.*, 74 P.3d 896, 903 (Alaska 2003) ("The superior court is entitled to rely on a parent's documented history of conduct as a predictor of future behavior."); *Erica A. v. State, Dep't of Health & Soc. Servs.*, 66 P.3d 1, 8 (Alaska 2003) (explaining that "the court was entitled to consider the division's extensive history of efforts and [the parent's] consistent lack of success at addressing problems").

[20] 234 P.3d at 1251-52.

[21] *Id.* at 1260-61.

plans showed little progress over the three years of her involvement with OCS. And over those three years, there were significant periods when Amy failed to stay in contact with OCS.

After Kadin was born, Amy indicated that she wanted treatment, but she refused to enter long-term residential treatment, she did not complete a substance abuse assessment, and she would not sign a release of information to enable OCS to set up treatment. Despite her history, Amy testified that she did not need long-term treatment. The superior court properly considered Amy's conduct in the eight months after Kadin was born in conjunction with her long history of substance abuse. The court found that Amy needed long-term treatment to address her substance abuse and that Amy's assertion that she would stay sober was not credible. These findings are supported by the record, and we therefore defer to the superior court's judgment.[22]

Amy also points to AS 47.10.088(d), which requires OCS to file a termination petition if the child has been out of the parent's custody for 15 of the last 22 months. She argues that this statute establishes that 22 months is a more reasonable period to allow her to remedy her conduct. We previously rejected this argument in *Christina J. v. State, Department of Health & Social Services.*[23] There, we explained that a reasonable time is not defined "as a specific number of months or by reference to parents' needs, but as 'a period of time that serves the best interests of the child.' "[24] The

---

[22] *See Hannah B. v. State, Dep't of Health & Soc. Servs.*, 289 P.3d 924, 930 (Alaska 2012) ("We defer to a superior court's credibility determinations, particularly when they are based on oral testimony.") (citing *Pravat P. v. State, Dep't of Health & Soc. Servs.*, 249 P.3d 264, 274 (Alaska 2011)).

[23] 254 P.3d 1095, 1106-07 (Alaska 2011).

[24] *Id.* at 1107 (quoting AS 47.10.990(28)).

legislature has found that children undergo a critical attachment process before the age of six, and "suffer tremendously when their bonding processes are interrupted."[25]

In *Christina J.*, the superior court relied on its finding that the parent had done "virtually nothing" to start changing the behavior that placed her child in need of aid and found that there was a low likelihood of returning the child to her care within a reasonable time.[26] Here, in eight months, Amy did not take any concrete steps toward obtaining the long-term residential treatment required by her case plan. She did not even sign the release forms to allow Johnston to make initial referrals. Amy's stated intention to complete treatment, her sobriety while incarcerated, and her attendance at NA meetings were all positive developments, but they were very recent changes. Despite these recent changes, the superior court could reasonably find that Amy had failed to remedy her conduct within a reasonable time.

In sum, the superior court properly considered Amy's history of substance abuse, her present conduct, and the amount of time necessary to remedy her substance abuse issues in determining that she had failed to remedy her conduct within a reasonable time. We conclude that the superior court's finding was not clearly erroneous.

**B.  The Superior Court Did Not Err In Concluding That OCS Made Reasonable Efforts To Reunite The Family.**

In order to terminate parental rights, the State must demonstrate by clear and convincing evidence that it made "timely, reasonable efforts to provide family

---

[25]  *Martin N. v. State, Dep't of Health & Soc. Servs.*, 79 P.3d 50, 56 (Alaska 2003) (explaining that a child's "need for permanency must reasonably limit the length of time accorded to [the parent] to remedy his behavior").

[26]  *Christina J.*, 254 P.3d at 1107.

support services to the child and to the parents" to reunite the family.[27]  The duty to provide reasonable efforts includes the duty to:

> (1) identify family support services that will assist the parent . . . in remedying the conduct or conditions in the home that made the child a child in need of aid; (2) actively offer the parent or guardian, and refer the parent or guardian to, the services identified . . . ; and (3) document the department's actions that are taken . . . .[28]

Reunification efforts need not be perfect, only reasonable in light of the circumstances.[29] These circumstances can include a parent's unwillingness to participate in treatment,[30] or a parent's incarceration.[31]

The superior court found that in the years before Kadin's birth OCS tried to get Amy to address her substance abuse with no success.  And after Kadin's birth, OCS spoke to Amy "repeatedly to get her to obtain an updated [substance abuse] assessment and to begin treatment," but she refused.  The superior court recognized that

---

[27]     AS 47.10.086(a); AS 47.10.088(a)(3); *see also Barbara P.*, 234 P.3d at 1261 (citing AS 47.10.086(a); AS 47.10.088(a)(3); CINA Rule 18(c)(2)(A)).

[28]     AS 47.10.086(a).

[29]     *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678 (Alaska 2008).

[30]     *Id.* (citing *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 991 (Alaska 2002)).

[31]     *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1096 (Alaska 2001) (explaining that incarceration significantly affects the scope of active efforts required under the Indian Child Welfare Act, and that Department of Corrections programs can be considered in determining whether the state has made active efforts under ICWA); *see also Zander P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 2007 WL 2745157 at *5 (Alaska, Sept. 19, 2007) (noting incarceration significantly affects the scope of reasonable efforts required).

if this had been Amy's first encounter with OCS, then OCS's efforts may not have been reasonable, and the filing of the petition three months after the child's birth may have been too hasty. But, relying on the difficulty OCS had in contacting and engaging Amy for three years, the court found clear and convincing evidence that the state made reasonable efforts at reunification.

Amy argues that there was no evidence OCS offered or referred Amy to any services as required. Amy alleges that: (1) Johnston only "spoke with Amy a total of three times in the eight months after Kadin's birth;" (2) Johnston could have met with Amy at regularly scheduled visitation; (3) Johnston made no referrals; and (4) the case plan regarding Kadin was not presented to Amy.

The record does not support Amy's argument. The superior court correctly considered the interactions between OCS and Amy over three years — both prior to and after Kadin's birth.[32] The record shows that OCS repeatedly urged Amy to get substance abuse treatment, but Amy was not willing to participate fully in treatment, and she would drop out of contact with OCS for months at a time.

When Darcy was born in March 2009, OCS visited Amy in the hospital and discussed Amy's need to complete a substance abuse assessment and a treatment program. After she was discharged from the hospital, OCS lost contact with her. In September 2009, the caseworker discussed a case plan with Amy and referred her to treatment. But Amy did not enter treatment because she refused to complete the required substance abuse assessment. After a few months, Amy again dropped out of contact with

---

[32]     *Erica A. v. State, Dep't of Health & Soc. Servs.*, 66 P.3d. 1, 8 (Alaska 2003) ("We have held that the state's efforts to prevent breakup of the entire family may be considered in assessing whether that effort was sufficient with respect to a particular child.") (quoting *E.A. v. State*, 46 P.3d 986, 991 (Alaska 2002)) (internal quotation marks omitted).

OCS. After Amy was incarcerated in December 2010, she completed a substance abuse assessment and entered a treatment program. But when Amy was released, she did not follow the recommendation that she complete residential treatment. Instead, she dropped out of contact with OCS and began using drugs again.

There was very little contact between Amy and Johnston after Kadin's birth. At the hospital, after Kadin was born, Johnston again discussed with Amy her need for treatment. But then Amy dropped out of contact with OCS. Because Amy had not provided contact information to OCS, Johnston went to a family visit to schedule a case planning meeting. At the meeting, Johnston outlined Amy's primary case plan requirement — her need for residential substance abuse treatment — but Amy declined. Amy also refused to sign a release of information that was necessary for Johnston to make referrals. Johnston attempted to schedule two other meetings — again by dropping in on Amy's visits with Kadin — but Amy did not show up. In June 2012, OCS lost contact with Amy altogether when she stopped attending visits.

The superior court recognized that Johnston's efforts were not perfect; there was more that she could have done to stay in contact with Amy. But the superior court's finding that OCS made reasonable efforts was not clearly erroneous based on Amy's unwillingness to participate in residential treatment and Amy's failure to maintain regular contact with OCS.

## C. The Superior Court's Finding That Termination Was In Kadin's Best Interests Was Not Clearly Erroneous.

In order to terminate parental rights, the superior court must find by a preponderance of the evidence that termination is in the child's best interests.[33] The court may consider the statutory factors listed in AS 47.10.088(b) in determining

---

[33]    AS 47.10.088(c); CINA Rule 18(c)(3).

whether termination is in the best interests of the child, including: (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy his or her conduct; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.[34]

The superior court properly considered the statutory factors and found that it was in Kadin's best interests to terminate Amy's parental rights. The court found that Amy "remains at a very high risk of continued abuse of cocaine." Based on her history of substance abuse and the most recent substance abuse assessment, the superior court found that it would take at least a year of residential treatment to overcome Amy's substance abuse issues and prepare her to care for Kadin. This amount of time was "far too long to be reasonable."

The superior court also found that Amy had never demonstrated an ability to care for a young child. Kadin was strongly bonded to his grandmother, Vallerie, and his sister, Darcy; it was therefore in his best interests to remain with them. Vallerie had been approved to adopt both Darcy and Kadin. The court noted that due to this family placement, Kadin would be able to have a relationship with Amy if Amy overcame her substance abuse.

Amy argues that she was two months sober at the time of termination and determined to abstain from drugs. Amy reasons that, because Kadin was placed with Amy's mother, he would not have been harmed by allowing Amy more time to address her substance abuse issues. And, she argues that she should have received more time

---

[34]  *Thea G. v. State, Dep't of Health & Soc. Servs.*, 291 P.3d 957, 966 (Alaska 2013); *Judith R. v. State, Dep't of Health & Soc. Servs.*, 289 P.3d 896, 901 (Alaska 2012).

because "it is in the best interest of a child . . . to be reunited with his or her biological parent."

But Amy's recent sobriety was not determinative. Amy had struggled with substance abuse for almost ten years. She had failed to complete substance abuse treatment twice and had recently refused to enter residential treatment. Despite her history, Amy testified that she did not need residential treatment to remedy her addiction. The superior court reasonably relied on Amy's long history of substance abuse and unsuccessful treatment when it determined that Amy's claim that she was motivated to stay clean was not credible.

As we have previously explained, "in a termination trial, the best interests of the child, not those of the parent[], are paramount."[35] We have also recognized that young children have unique needs for permanency and bonding.[36] At the time of termination, Kadin was only eight months old. He had spent his entire life in his grandmother's care and had developed a strong bond with his grandmother and his older sister.[37]

---

[35] *Kent V. v. State, Dep't of Health & Soc. Servs.*, 233 P.3d 597, 601 (Alaska 2010) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 954 (Alaska 2000)).

[36] *See Christina J.*, 254 P.3d at 1107 (citing AS 47.05.065(5)) (noting the legislature has recognized that children under six undergo a critical attachment process and a failure to bond with adult caregivers during this time can result in lasting emotional damage).

[37] *See Barbara P.*, 234 P.3d at 1264 ("[T]he fact that a child has bonded with [the] foster parent can [also] be a factor in considering whether it is in the child's best interests to terminate a parent's rights.") (quoting *Karrie B. ex rel. Reep v. Catherine J.*, 181 P.3d 177, 185 (Alaska 2008)) (alteration in original).

In contrast, Amy had not maintained consistent contact with Kadin, even for the short period these proceedings were pending. According to the OCS caseworker and her most recent substance abuse assessment, Amy needed at least a year of residential treatment to adequately address her substance abuse issues. Based on Kadin's age, his bond with his grandmother, and his need for permanency, the superior court could reasonably conclude that Kadin could not be safely returned to his mother within a reasonable time.

In summary, the superior court properly considered Kadin's best interests in light of the amount of time it would take for Amy to address her substance abuse issues, and we cannot conclude that these findings were clearly erroneous.

## V.   CONCLUSION

We AFFIRM the superior court's judgment terminating Amy's parental rights.

# In the Supreme Court of the State of Alaska

| | | |
|---|---|---|
| Amy M., | ) | |
| | ) | Supreme Court No. **S-14948** |
| Appellant, | ) | |
| v. | ) | **Order** |
| | ) | Petition for Rehearing |
| State of Alaska, DHSS, OCS, | ) | |
| | ) | |
| Appellee. | ) | Date of Order: **11/8/2013** |
| | ) | |

Trial Court Case # **3AN-12-0028 CN**

Before:    Fabe, Chief Justice, and Winfree, Stowers, Maassen, and
Bolger, Justices

On consideration of the Petition for Rehearing filed on **9/13/2013**, and the Response to Petition for Rehearing filed on **10/3/2013**,

**IT IS ORDERED**:

1.    The Petition for Rehearing is **GRANTED**.

2.    Opinion No. 6820, issued on 9/6/2013, is **WITHDRAWN**.

3.    Opinion No. 6840 is issued on this date in its place.

The passage that follows Heading C on page 15 has been modified and now reads as follows:

> In order to terminate parental rights, the superior court must
> find by a preponderance of the evidence that termination is in
> the child's best interests.[1]   The court may consider the
> statutory factors listed in AS 47.10.088(b) in determining
> whether termination is in the best interests of the child,
> including: (1) the likelihood of returning the child to the
> parent within a reasonable time based on the child's age or

---

[1]    AS 47.10.088(c); CINA Rule 18(c)(3).

Supreme Court Order
Page 2
No. S-14948
November 8, 2013

needs; (2) the amount of effort by the parent to remedy his or her conduct; (3) the harm cased to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.[2]

Entered by direction of the court.

Clerk of the Appellate Courts

/s/

_____

Marilyn May

cc:    Supreme Court Justices
       Judge Morse
       Trial Court Appeals Clerk
       West Publishing
       Other Publishers

Distribution:

Olena Kalytak Davis                Megan R. Webb
Attorney at Law                    Assistant Attorney General
120 W. 11th Ave.                   1031 W. 4th Ave., Suite 200
Anchorage, AK 99501                Anchorage AK 99501

David T. Jones
Senior Assistant Attorney General
1031 W. 4th Ave., Suite 200
Anchorage AK 99501

---

[2]    *Thea G. v. State, Dep't of Health & Soc. Servs.*, 291 P.3d 957, 966 (Alaska 2013); *Judith R. v. State, Dep't of Health & Soc. Servs.*, 289 P.3d 896, 901 (Alaska 2012).