NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KARINE W., | ) |
| | ) Supreme Court No. S-18055 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-00138 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1883 – March 16, 2022 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter R. Ramgren, Judge.

Appearances: Julia Bedell, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Thomas S. Flynn, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Laura Hartz, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

A mother with an extensive history of substance abuse appeals the termination of her parental rights to her daughter. The Office of Children's Services

---

*         Entered under Alaska Appellate Rule 214.

(OCS) took custody of the daughter as an infant after the mother used drugs while pregnant. Over four years later, the superior court terminated the mother's parental rights. The court acknowledged the mother's numerous efforts to address her substance abuse but held that her history of repeated relapses and failed treatment attempts amounted to a failure to remedy the conduct that put her daughter at risk. The court also found that, despite the mother's bond with her daughter, termination of the mother's parental rights served her daughter's need for permanency and was in the child's best interests. We recognize the mother's efforts in the face of her significant challenges. But because the court's factual findings were not clearly erroneous, we affirm its decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Karine W. is a mother with a long history of substance abuse reaching back to childhood.[1] Due to Karine's substance abuse, OCS had previously taken custody of her son; she relinquished her parental rights to him in 2014 when he was four years old. He was then adopted by Karine's mother Linda.

Before becoming pregnant with Soleil, Karine had attempted substance abuse treatment several times and tried to maintain some level of sobriety, without lasting success. According to Karine, she was sober for most of her pregnancy with Soleil. However Karine relapsed and used heroin and methamphetamine in her third trimester. Soon thereafter, in March 2017, she went into early labor. At birth Soleil suffered neonatal withdrawal symptoms and tested positive for heroin and methamphetamine.

Four days after Soleil was born, OCS filed an emergency petition for temporary custody and placed Soleil with Linda. Soleil's paternal grandparents also

---

[1]    We use pseudonyms for all family members to protect their privacy.

helped take care of her; soon thereafter, Linda and the paternal grandparents began alternating custody of Soleil every two weeks.

Karine continued to use heroin and methamphetamine after Soleil was born. In April 2017 Karine completed a substance abuse assessment in which she reported last using heroin and methamphetamine about two weeks prior. The assessment recommended intensive and long-term inpatient substance abuse treatment.

Prior to attending inpatient treatment, Karine needed to get a physical examination. This examination revealed that she had untreated tuberculosis, which precluded her admission. Karine soon began tuberculosis treatment, but it would take four to six months to obtain clearance to begin any inpatient substance abuse programs.

During much of this period, OCS referred Karine to random urinalysis tests (UAs). Karine tested negative on the majority of her UAs in spring 2017 but stopped attending them by late August. OCS created a case plan for Karine in July 2017 noting that her whereabouts were unknown.

By November 2017 Karine had re-engaged with OCS. According to her assigned OCS caseworker, Karine was "very open about her [drug] use" and "very open to getting help, too." Over the next few months, the caseworker helped Karine contact most of the inpatient treatment programs in Anchorage, and Karine consistently expressed willingness to enter treatment.

The OCS caseworker initially pursued inpatient treatment for Karine with Stepping Stones, a program for women with young children. Karine obtained a new assessment in December 2017, reporting last using heroin about a week prior and last using methamphetamine the previous day.

In February 2018 Karine was admitted to inpatient treatment with the expectation that she would attend for a full year. The all-women program at Stepping Stones was not available at that time, so she was admitted to a co-ed facility instead. At

first Karine was very motivated to get help, but the environment became problematic. Karine faced difficulties with her peers and staff members; she testified about theft, jealousy, and discrimination based on her looks and prior sex work. Karine left treatment — contrary to clinical advice — two weeks after she was initially admitted and did not return. The caseworker "could tell at that time that . . . there was no trying to convince her to go back."

Karine visited Soleil at Linda's home shortly after leaving treatment. The OCS caseworker observed Karine with both Soleil and her son; the caseworker was impressed with her parenting skills and noted that she was bonding with her children. Karine was sober at the time.

While waiting for another inpatient program, Karine obtained a substance abuse assessment in April 2018 from Providence Breakthrough's lower-level partial hospitalization program. She reported last using heroin on the day of the assessment and last using methamphetamine about two weeks prior. She began treatment at Breakthrough in early May 2018 but only attended three treatment days before she was discharged for her lack of engagement. A mental health therapist attempted to contact Karine to inquire about her absence, but the therapist could not reach her. Karine testified that she failed to attend because she did not have a vehicle.

From the summer of 2018 through the spring of 2019 Karine did not attend any substance abuse treatment, and her contact with OCS became spotty. The caseworker was able to meet with Karine in person once in May 2018 after she was discharged from Breakthrough, then lost contact with her until October. Karine also did not regularly attend visits with Soleil during this time period.

On her own initiative, Karine entered a methadone treatment program in

June 2019.[2] Her intake UA was positive for amphetamines and opiates. Karine indicated that OCS caseworkers initially told her that using methadone would hinder her efforts to obtain custody of Soleil. But Karine thought it helped get rid of her heroin cravings and "straighten out [her] life," so she pursued it anyway. Karine regularly obtained her methadone doses in June and July 2019, but her UAs continued to return positive for opiates. Starting in early August, Karine began only sporadically obtaining her methadone doses, and records indicate that she was discharged involuntarily by the end of the month for failing to attend treatment.

In October 2019 Karine obtained another substance abuse assessment in which she reported using heroin up to 10 times per day and using methamphetamine frequently. The assessment recommended that she enter a detoxification program, followed by high-intensity medically-managed inpatient treatment.

Shortly thereafter Karine twice attempted to detoxify at the Ernie Turner Center. On her first attempt she stayed for fourteen days, the longest the center allowed patients to stay, before being discharged to the emergency room because she was still "really ill." On her second attempt, Karine stayed for about seven days before being discharged in early November and again visiting the emergency room.

Karine was admitted to inpatient treatment at Stepping Stones in November 2019 but was discharged soon after admission. Records from Stepping Stones indicate that she "le[ft] the program against staff advice" after staying for only one day; Karine testified that she stayed for three days but was asked by staff members to leave because she started detoxing.

Also in November Soleil transitioned from the alternating two-week

---

[2]     Karine's treatment counselor described methadone as a drug that prevents a person from getting high on heroin and helps with withdrawal symptoms.

schedule with Linda and her paternal grandparents to full-time placement with the paternal grandparents. While Linda and the paternal grandparents had enjoyed a warm relationship , and Linda had been able to facilitate Karine's relationship with Soleil while the grandparents essentially shared custody, difficulties arose between Linda and Karine that at times complicated Karine's relationship with Soleil.

In December 2019 Karine returned to methadone treatment. She was under the influence of heroin at the time of her intake. Her treatment counselor testified that during subsequent months, she "was doing good at participating in her program and trying to beat this habit" but would not "say that she was doing good with staying sober." Karine had "good days and bad days with her . . . UAs"; according to her counselor, she "would do good for three or four months with all negative UAs, and then all of the sudden she'd have a positive." But Karine would tell her counselor when she relapsed, and she would still show up for her UAs.

Karine was still interested in finding inpatient treatment, but most treatment facilities did not permit continued methadone use. After several weeks of effort by both Karine and her caseworker on submitting applications and following up, Karine was admitted in February 2020 to Dena A Coy, an inpatient treatment facility that permitted continued methadone dosing. On the day she arrived Karine reported that she had recently used heroin and methamphetamine, but after about two weeks her monthly UAs came back negative.

Treatment at Dena A Coy initially progressed well for Karine, and she enjoyed the program. Karine was able to visit with Soleil in person twice a week, and Linda would often bring Karine's son to visit as well. But changes related to the COVID-19 pandemic made treatment difficult; Dena A Coy put the facility on lockdown, suspended visits with children, and limited Karine's ability to go out of her bedroom. Karine was discharged in April 2020 after she lost her temper with staff and violated

facility rules. Although Karine had remained sober throughout her stay at Dena A Coy, her post-discharge UA in April came back positive for opiates and amphetamines.

Despite her setbacks, Karine was still motivated to obtain treatment. Due to the pandemic, however, most inpatient facilities were either full or no longer accepting clients. So Karine proposed once again attending outpatient treatment with Providence Breakthrough. Given that no appropriate inpatient facility could be found, the caseworker agreed that Karine should pursue Breakthrough.

Karine received a new substance abuse assessment with Breakthrough in April 2020, which recommended intensive outpatient treatment instead of inpatient treatment. But Karine minimized her drug use during this assessment, and her assessor noted that Karine was "variable in her reporting accuracy, and appeared to minimize the impact of her use" and the extent of her use. Karine began treatment at Breakthrough in May 2020 and successfully graduated in October 2020. According to her monthly UAs, she remained sober during this time.

Throughout her outpatient treatment at Breakthrough, Karine also continued to pursue treatment at the methadone clinic. However, she was involuntarily discharged from methadone treatment in November 2020 after missing numerous doses in a row, which was contrary to clinical advice because it was likely to induce cravings and withdrawal symptoms. Karine never told her caseworker or Linda that she was discharged. Given the discharge, Karine was also no longer participating in UAs through the methadone clinic.

Between late November and mid-December OCS had a hard time connecting with Karine, and her visitation with Soleil became sporadic. In early 2021 OCS tried to contact Karine for case planning, but she told the caseworker to talk to her attorney and did not engage in any planning activities.

**B.     Proceedings**

OCS filed a petition to terminate parental rights in August 2020.  At that time, Soleil was over three years old and had been in OCS custody for her entire life.

The superior court held a termination trial in January 2021.  The court heard testimony from some of Karine's OCS caseworkers, her treatment provider at the methadone clinic, and Karine herself.

The superior court did not immediately issue a decision.  Instead, the court reopened the trial on April 15, 2021 to hear additional testimony about Karine's recent progress.  The court heard testimony from Soleil's paternal grandmother, an OCS supervisor, and Linda.  Karine did not provide further testimony.

The next day the court issued its decision terminating Karine's parental rights to Soleil.  According to the court, Karine's repeated treatment attempts and relapses along with her recent refusal to engage with OCS were "consistent with a failure to remedy the conduct that [led] to [Soleil] being placed in OCS custody."  Noting that the case had "been open longer than most [child in need of aid (CINA)] matters," the court also found that termination was in Soleil's best interests because "[t]here is no reason to believe that with more time [Karine] would be able to make the changes necessary to regain custody."  Despite Karine's progress the court found that "she ha[d] not reached a level of stability or a period of proven sobriety long enough for the court to deny [Soleil] the permanency she deserves."

Karine appeals.

## III.    STANDARD OF REVIEW

"Whether a parent has remedied the conduct or conditions that placed the child in need of aid and whether termination is in the best interests of the child are

findings of fact," which we review for clear error.[3]  "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us with a definite and firm conviction that a mistake has been made."[4]  "Generally, conflicting evidence is insufficient to overturn the superior court's decision, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[5]  Deference to a superior court's factual findings "is particularly appropriate in close cases."[6]

## IV.  DISCUSSION

Karine challenges the superior court's findings that:  (1) she failed to remedy her conduct that caused Soleil to be a child in need of aid, and (2) termination of her parental rights was in Soleil's best interests.  Because these findings were not clearly erroneous, we affirm the superior court's termination order.

### A.  The Superior Court Did Not Clearly Err By Finding That Karine Failed To Remedy Her Substance Abuse.

To terminate parental rights the superior court must find by clear and convincing evidence that the parent "has not remedied the conduct or conditions in the home that place the child at substantial risk of harm."[7]  The key question is whether the parent has "remedied the problems that placed [the] child[] at risk and gained the

---

[3]     *Amy M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 253, 256 (Alaska 2013).

[4]     *Id.* at 256-57 (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)).

[5]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[6]     *Barbara P.*, 234 P.3d at 1260.

[7]     AS 47.10.088(a)(2)(A).

necessary skills so that the child[] could be safely returned to [the parent's] care.'"**8** "The problems need to be not just addressed but 'remedied.' "**9**

Karine argues that the superior court "improperly relied on [her] past conduct" in making its failure-to-remedy finding "without adequate regard for her extensive efforts to find and complete treatment." To be sure, Karine's efforts to address her longstanding substance abuse challenges are admirable. At times Karine made significant progress toward addressing her addiction, and caseworkers and the superior court praised her openness to seeking help. The superior court also commended Karine's "attempts over a significant period of time to address her addiction," despite delays caused by her health issues and the COVID-19 pandemic. We recognize Karine's substantial efforts as well.

However, "[t]he superior court is entitled to rely on a parent's documented history of conduct as a predictor of future behavior,"**10** and Karine's history reveals a recurring pattern of relapse and failed treatment. The superior court explained that "[s]ince the start of this case in 2017, [Karine] ha[d] repeatedly tried and failed to remain sober." Although Karine suggests that the "combination of methadone treatment and inpatient services" worked for her and made her "a fit parent," she abruptly ceased methadone treatment on multiple occasions over the years — contrary to the recommendations of her treatment provider — and she was repeatedly discharged from

---

**8** *Barbara P.*, 234 P.3d at 1260.

**9** *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 558 (Alaska 2017).

**10** *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003); *see also Barbara P.*, 234 P.3d at 1261.

inpatient programs prior to completion. When Karine most recently ended methadone treatment early, following her graduation from Providence Breakthrough, she put herself in danger of cravings, withdrawals, and relapse. Moreover, because the methadone clinic had administered Karine's regular UAs, Karine's discharge from methadone treatment ended her participation in UAs. Karine did not tell her mother or her caseworker about her discharge; at trial, she gave multiple reasons for choosing to stop methadone treatment before ultimately acknowledging that she had been discharged for failing to attend multiple appointments in a row. Finally, Karine did not participate in case planning or treatment during early 2021, so OCS was not able to monitor her progress or lack thereof during that time.

The superior court acknowledged that it "struggled with this case." The court commended Karine's significant efforts toward addressing her substance abuse but also noted that she was clearly "a person that's struggling with addiction." After balancing Karine's efforts to address her substance abuse with her many unsuccessful attempts to maintain sobriety and her recent lack of engagement, the court found that she failed to remedy the conduct that placed Soleil in need of aid. We agree that Karine's efforts to address her addiction make this a close question, but "the deference accorded to a superior court's factual findings is particularly appropriate in close cases."[11] And we have emphasized that the parent must not only address but *remedy* conduct that has placed a child at substantial risk.[12] Reviewing the record as a whole, the superior court's finding that Karine failed to remedy her conduct causing Soleil to be a child in need of aid is not clearly erroneous.

---

[11] *Barbara P.*, 234 P.3d at 1260.

[12] *Jude M.*, 394 P.3d at 558.

**B.     The Superior Court Did Not Clearly Err By Finding That Termination Of Karine's Parental Rights Was In Soleil's Best Interests.**

"Before terminating parental rights to a child, the superior court must find by a preponderance of the evidence that termination is in the child's best interests."[13] The court may consider "any . . . facts relating to the best interests of the child" in making this finding, including the statutory factors in AS 47.10.088(b), "the bonding that has occurred between the child and h[er] foster parents, the need for permanency, and the offending parent's lack of progress."[14]   "[A] child's need for permanence and stability should not be put on hold indefinitely while the child's parents seek to rectify the circumstances that cause their children to be in need of aid."[15]

The superior court found that it was in Soleil's best interests to "end the limbo in which she has spent her entire four years of life" and free her for adoption by her paternal grandparents.  The court explained that it was "struggling with [Karine's] continuing relationship with [Soleil]" because it was "clear that she has a bond with the child and has continued to maintain that bond."  But recognizing the importance of permanency, especially for young children,[16] the court found that "[t]here is no reason to believe that with more time [Karine] would be able to make the changes necessary to

---

[13]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1270-71 (Alaska 2014) (citing CINA Rule 18(c)(3)).

[14]     *Id.* at 1271 (footnotes omitted).

[15]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943, 954 (Alaska 2013) (alteration in original) (quoting *Kent V. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 233 P.3d 597, 603 (Alaska 2010)).

[16]     *Debbie G. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 132 P.3d 1168, 1171 n.5 (Alaska 2006).

regain custody of" Soleil and that Karine "has not reached a level of stability or a period of proven sobriety long enough for the court to deny [Soleil] the permanency she deserves." The court also considered Soleil's bond with her paternal grandparents and noted that she was doing well in their care.

Karine asserts that the superior court "erred in weighing a desire for perceived permanency over [her] enduring parental relationship" with Soleil, given their strong mother-child bond. However, the superior court is permitted to consider and give weight to a number of factors in assessing a child's best interests and "need not accord a particular weight to any given factor" when determining whether termination of parental rights is in a child's best interests.[17] In light of this discretion and the evidence presented at trial, we conclude that the court properly took into account Soleil's need for permanency, the low likelihood of being able to return Soleil to Karine's care within the foreseeable future, Soleil's bond with her mother, and Soleil's bond with her paternal grandparents. The court's finding based on this evaluation that termination was in Soleil's best interests is not clearly erroneous.

At oral argument Karine argued for the first time that the superior court had not adequately considered the sibling bond between Soleil and Karine's son in analyzing Soleil's best interests. Alaska law does recognize a "presumption that maintenance of a sibling relationship . . . is in a child's best interest."[18] But the record does not establish that any relationship or bond between Soleil and her sibling would be impacted by terminating Karine's parental rights. Rather, the evidence established that Karine had relinquished her parental rights with respect to her son prior to Soleil's birth, that

---

[17] *Chloe W.*, 336 P.3d. at 1271.

[18] AS 47.10.080(w).

Karine's son was adopted by Linda, and that the maternal and paternal grandparents had a largely harmonious relationship while Karine and her mother had a somewhat contentious relationship. It does not follow in this context that preserving Karine's parental rights to Soleil would maintain Soleil's relationship with her sibling.

Karine also contends that the superior court erred by terminating her parental rights instead of ordering a guardianship because a guardianship would provide the necessary permanence while also allowing "for a supportive dynamic that includes Karine as Soleil's loving and devoted mother." Yet Karine did not ask the superior court to consider whether guardianship instead of termination might be in Soleil's best interests. By failing to raise or explore guardianship at the termination trial, Karine waived this argument on appeal.[19] Moreover, the superior court is not required to consider a guardianship "except to the extent that the statute requires the court to order an arrangement that is in the child's best interest,"[20] and it was not clearly erroneous for the court to find by a preponderance of the evidence that termination was in Soleil's best interests.

## V. CONCLUSION

Despite Karine's significant efforts to address her longstanding substance abuse challenges, we cannot say that the factual findings the superior court made to support the termination of her parental rights were clearly erroneous. We therefore AFFIRM the superior court's decision.

---

[19]     *See Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 935 (Alaska 2012).

[20]     *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001).