NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ABIGAIL C., | ) | |
| | ) | Supreme Court No. S-16782 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-00700 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE | ) | No. 1680 – June 13, 2018 |
| OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay and Jennifer Henderson, Judges.

Appearances: J. Adam Bartlett, The Law Office of J. Adam Bartlett, LLC, Anchorage, for Appellant. David T. Jones, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Paul F. McDermott, Assistant Public Advocate, and Chad Holt, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

# I. INTRODUCTION

The superior court terminated a mother's parental rights. The mother appeals the superior court's findings that the Office of Children's Services (OCS) made reasonable efforts to reunite her with her child and that terminating her parental rights was in the child's best interests.

We conclude that the superior court did not clearly err in its findings. The evidence supports the findings that OCS appropriately exercised its discretion when it focused its efforts on the mother's substance abuse; that OCS acted reasonably in its referrals for relevant services and other assistance; and that the ultimate failure of OCS's efforts was due primarily to the mother's lack of engagement. The finding that termination was in the child's best interests is also well supported by the child's need for permanency and by evidence that the mother was unlikely to remedy her substance abuse problems. We therefore affirm the superior court's decision terminating the mother's parental rights.

# II. FACTS AND PROCEEDINGS

John[1] was born in 2011 and taken into OCS's custody in 2015. Abigail C. is his mother; the identity of his biological father is unknown. Abigail has a history of drug abuse, including opiate use in 2010 and methamphetamine use in 2015-16.

OCS's involvement with Abigail's family followed two incidents in which she lost track of John's whereabouts. OCS received a report in 2015 that John, then four years old, was walking alone near the Seward Highway in Anchorage; an OCS investigator later testified that "it took a while to figure out who he belonged to and then to get anybody to come to the door." A few months later the Anchorage Police

---

[1]     Pseudonyms have been used to protect the privacy of the parties.

Department was notified that John was walking alone outside; the responding officer testified that John "didn't have a jacket on and he was wearing what appeared to be adult shoes, and he had a . . . key chain full of keys." The officer located John's house nearby, and when no one responded to knocking and calling, the officer "eventually entered the [house] via one of the keys that the child had." The officer found Abigail upstairs watching television; she "did not know where her child was and reported not hearing" the police at her door. Both Abigail and her boyfriend, Joe A., were criminally charged with child neglect and inadequate supervision.[2]

The OCS caseworker first assigned to Abigail's case had concerns that Abigail was using drugs and asked that she submit to urinalysis (UA) testing. Abigail missed several tests and was deemed to have refused another when she brought a sample to the testing site. In another test she was positive for amphetamine, methamphetamine, and benzodiazepine. During this time OCS was experimenting with various safety plans and placements, none of which lasted long: an in-home safety plan, an out-of-home safety plan with neighbors, then placement with one of Abigail's friends.

In October 2015 OCS filed a non-emergency petition for temporary custody of John, citing the times the child was found outside unattended and Abigail's failed drug tests. The superior court granted OCS temporary custody in November. OCS then placed John with Joe's mother, Josie A., whom John had always considered his grandmother. At first Abigail spent eight to ten hours a day at Josie's home taking care of John, but over time her visits tapered off.

---

[2] Abigail pleaded no contest to the child neglect charge. She was given a suspended sentence, fined $500, and ordered to complete 12 hours of OCS-approved parenting classes.

OCS continued to focus on Abigail's drug use. The caseworker referred her to Genesis Recovery Systems, Inc. for a substance abuse assessment, which occurred in January 2016. The assessment recommended that Abigail complete a course at Genesis's alcohol and drug information school and attend Narcotics Anonymous meetings with a sponsor; after receiving additional information about Abigail's past drug use, Genesis supplemented the recommendation to include intensive outpatient treatment. Abigail did not follow any of these recommendations.

OCS also placed Abigail on a UA testing schedule. She continued to miss appointments, however — a total of 32 from October to May 2016. Nearly all the tests she did complete were positive for benzodiazepine, apparently because she was taking prescribed Xanax. Between October 2015 and April 2016 she also tested positive for methamphetamine and amphetamine five times and once for just methamphetamine.

Another OCS social worker took over Abigail's case in February 2016. The social worker's new case plan — with reunification as its primary goal — provided that Abigail should follow all of Genesis's recommendations regarding substance abuse treatment and continue the UA testing. The case plan also made some new referrals: to Parents as Teachers for parenting classes, to Akeela, Inc. for a mental health assessment, and to Pathway Family Center for "other supportive resources." Abigail participated in parenting classes with an in-home provider and attended group therapy sessions at Pathway, but she still failed to engage in the recommended substance abuse treatment.

In March Abigail had a drug assessment with Insight Therapy LLC. She told the assessor that she had been clean and sober for five years except for a two-week lapse in October 2015, when she abused Adderall and methamphetamine. But Insight's report noted Abigail's recent positive tests for methamphetamine. Insight diagnosed her with mild amphetamine substance use disorder and severe opioid substance use disorder,

and it recommended that she receive outpatient treatment followed by aftercare. Again, Abigail did not follow up on these recommendations.

Abigail and Joe broke up in April 2016. Abigail testified that the breakup left her with nothing but her clothes and her car, and she was forced to move from place to place to survive. Beginning in June her visits with John became more sporadic, amounting to only once or twice a month. Visits picked up again in December and then dropped off a few months later; Abigail explained that she did not like going over to Josie's house because she would get into arguments with Joe in front of John. She also testified, however, that she stayed in contact with John by telephone.

Abigail had another substance abuse assessment in June 2016, this time at Wisdom Traditions, Health and Wellness Center. She told the assessor about some modest but recent methamphetamine use and admitted to a brief relapse on amphetamines in October 2015 when feeling stressed and overwhelmed. The assessor recommended intensive outpatient treatment, but Abigail did not think she could afford services at Wisdom Traditions, and she was not interested in getting treatment at more affordable providers. Her OCS social worker advised her to apply for Medicaid, but, the social worker testified, "there was always a reason as to why [the paperwork] didn't get done." The social worker also called Wisdom Traditions to find out "what we could do to help [Abigail] get treatment"; she learned that if Abigail brought in proof of her low income and unemployment status, the provider would "create a sliding scale" for her under which "the minimum payment would be under $50 or something" per session.

In June 2016 Abigail stipulated that John was a child in need of aid pursuant to AS 47.10.011(10) (parent's addictive or habitual use of an intoxicant). OCS created another case plan in October which kept reunification as the primary goal but added adoption as an alternative. The case plan maintained the recommendations for

outpatient substance abuse treatment and parenting classes while adding the goals of attaining housing and employment. To further these goals OCS referred Abigail to Alaska Housing Finance Corporation and Cook Inlet Tribal Council (CITC) for help with housing and to CITC and Job Ready Inc. for help with employment. An OCS social worker testified that she gave Abigail information about CITC's services and a bus pass to get there. The social worker offered to help Abigail fill out applications for housing and to give her postage stamps if she needed them; Abigail confirmed that the social worker helped her fill out a housing application. The social worker also gave Abigail a list of homeless shelters but at trial could not recall whether she called any of the shelters on Abigail's behalf. She testified that Abigail dropped out of contact with her sometime in October.

In February 2017 OCS filed a petition to terminate Abigail's parental rights to John. At the May termination trial, the court heard several hours of testimony. Abigail's OCS social worker testified that Abigail had not remedied the issues that brought John to OCS's attention in the first place, that she did not believe Abigail would seek substance abuse treatment if given more time to do so, and that OCS had identified two families interested in adoption.

The superior court decided that Abigail's parental rights should be terminated because of her substance abuse, which the court had "no reason to believe that . . . [she] is going to remedy." The court found that OCS made reasonable efforts to reunite Abigail with John through its efforts to engage Abigail in substance abuse treatment. The court also found that although Abigail and John had a strong bond, it was

in John's best interests that Abigail's parental rights be terminated. The court's written findings and conclusions confirmed its earlier decision on the record.[3] Abigail appeals.

## III. STANDARD OF REVIEW

"Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact."[4] "For mixed questions, 'we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[5] We review a best interests finding for clear error.[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err In Finding That OCS Made Reasonable Efforts To Reunite Abigail With John.

Abigail argues that the superior court erred in finding that OCS made reasonable efforts to reunite her with John. She argues that OCS should have concentrated on alleviating her homelessness before taking on her substance abuse problem because she would have been better able to participate in regular substance abuse treatment if she had "a stable place to live."

"Before terminating parental rights to a non-Indian child, the trial court must find by clear and convincing evidence that OCS made timely, reasonable efforts to provide family support services designed to prevent out-of-home placement or enable

---

[3] Judge Patrick J. McKay presided over the termination trial and made the oral findings; Judge Jennifer Henderson issued the written order.

[4] *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016) (quoting *Sherry R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 332 P.3d 1268, 1273-74 (Alaska 2014)).

[5] *Id.* (quoting *Sherry R.*, 332 P.3d at 1274).

[6] *Id.*

the child's safe return to the family home."[7]  OCS has "some discretion both in determining what efforts to pursue and when to pursue them."[8]

The evidence described above strongly supports the superior court's finding that OCS made reasonable efforts "to provide family support services to the parent[] and child designed to promote reunification," including substance abuse assessments, UAs, parenting classes, and offers of help with housing and employment before Abigail dropped out of contact.  OCS's efforts to address Abigail's substance abuse problems were hindered by her failure to follow through on recommendations for treatment; her unwillingness to engage is relevant to the reasonableness of OCS's efforts.[9]

Contrary to Abigail's argument on appeal, it was well within OCS's discretion to prioritize her substance abuse problems over her homelessness.  We recently rejected a similar argument in *Denny M. v. State, Department of Health & Social Services, Office of Children's Services*, a case decided under the Indian Child Welfare Act,[10] in which the mother argued that OCS had failed to make the required active efforts when it prioritized treatment for her mental health problems over helping her reach financial stability.[11]  We noted that it was "clear from the record . . . that [the mother's] mental health was the major obstacle to improvement in other aspects of her life, and the

---

[7]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (citing AS 47.10.086(a); AS 47.10.088(a)(3)).

[8]     *Emma D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 322 P.3d 842, 850 (Alaska 2014) (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 432 (Alaska 2012)).

[9]     *Sylvia L.*, 343 P.3d at 432 (observing that reasonable efforts may also be measured by parent's willingness to engage in services).

[10]     *See* 25 U.S.C. §§ 1901–1963 (2012).

[11]     365 P.3d 345, 351 & n.22 (Alaska 2016).

superior court could reasonably accept OCS's prioritization of its concerns."[12]  In this case, too, OCS's prioritization of services appears calculated to address what OCS reasonably identified as Abigail's most pressing need and was therefore well within its discretion.  We conclude that the superior court did not clearly err in finding that OCS made reasonable efforts toward reunification.

**B.    The Superior Court Did Not Clearly Err In Finding That It Was In John's Best Interests To Terminate Abigail's Parental Rights.**

Abigail also argues that it was not in John's best interests to terminate her parental rights because of their strong bond; she argues that the superior court should instead have postponed a termination decision for a few months to allow her to find housing and engage in substance abuse treatment.

The decision whether the termination of parental rights is in the child's best interests is reviewed for clear error.[13]  "[I]n a termination trial, the best interests of the child, not those of the parent[], are paramount."[14]  Some pertinent factors are identified

---

[12]     *Id.* at 351 n.22.

[13]     *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016).

[14]     *Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 261 (Alaska 2013) (second alteration in original) (quoting *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d 597, 601 (Alaska 2010)).

by statute,[15] and courts may also consider, as most relevant here, "the need for permanency" and the "parent's lack of progress."[16]

The superior court relied primarily on these two factors in determining that it was in John's best interests to terminate Abigail's parental rights: John's need for permanency and the unlikelihood that Abigail would remedy the conduct that made John a child in need of aid. John is six years old and at the time of trial was living with Josie, who did not want permanent custody of him. Abigail, despite her strong bond with John, was unable to care for him, and the court could reasonably conclude that her obstacles to parenting would continue. We see no clear error in the court's findings that Abigail was unable "to get it all together" and engage in the necessary substance abuse treatment despite all the resources that had been made available to her.

OCS had identified a possible adoptive placement with foster parents who had cared for John shortly after OCS first took custody; they were ready to proceed with adoption "as soon as possible" once Abigail's parental rights were terminated. The couple was aware of John's attachment to his grandparents and were willing to maintain that bond. And OCS had contact information for another couple also contemplating

---

[15]    The statutory factors include:

(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.

AS 47.10.088(b)(1)–(5).

[16]    *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1271 (Alaska 2014) (citations omitted).

adoption. Given the child's young age and need for permanency, the unlikelihood that his mother could safely and responsibly parent him even if given more time, and the availability of adoptive placements, the superior court did not clearly err when it decided it was in John's best interests to terminate Abigail's parental rights.

## V.    CONCLUSION

The superior court's decision to terminate Abigail's parental rights to John is AFFIRMED.